IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 06-00336-01-CR-W-NKL |
| ROBERT D. BOMAR, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**TO ACCEPT DEFENDANT'S GUILTY PLEA**

On September 27, 2006, I held a change-of-plea hearing after this case was referred to me by United States District Judge Nanette Laughrey. I find that defendant's plea was voluntary and therefore recommend that it be accepted.

*I. BACKGROUND*

On September 27, 2006, defendant waived indictment and an information was filed charging defendant with two counts of wire fraud, in violation of 18 U.S.C. § 1343.

Judge Laughrey referred this case to me for conducting a change-of-plea hearing and issuing a report and recommendation on whether to accept the plea. On September 27, 2006, defendant appeared before me with his counsel, Gerald Handley. The government was represented by Assistant United States Attorney Linda Marshall. The proceedings were

recorded and a transcript of the hearing was filed on September 28, 2006.

## *II. AUTHORITY OF THE COURT*

The authority of federal magistrate judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. United States v. Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991), Gomez v. United States, 490 U.S. 858 (1989)).

2

Case 4:06-cr-00336-ODS   Document 8   Filed 10/02/06   Page 2 of 11

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of *de novo* review by a district judge preserves the structural guarantees of Article III. United States v. Torres, 258 F.3d at 795. Applying the Peretz holding and the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796 (citing United States v. Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the key." Id. (quoting United States v. Williams, 23 F.3d at 633).

The Torres court also addressed the implications of such a delegation for Article III's case and controversy

3

clause. Id. Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a magistrate judge. Id. Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the magistrate judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the district court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### *III. FINDINGS OF FACT*

1. On September 27, 2006, an information was filed charging defendant with two counts of wire fraud, in violation of 18 U.S.C. § 1343 (Tr. at 9-10). Defendant understood the charges in the information (Tr. at 9, 11).

2. The statutory penalty for each count of wire fraud is not more than five years in prison, not more than $250,000 fine, not more than three years supervised release, a $100 special assessment, and restitution (Tr. at 12). Defendant understood the statutory penalties (Tr. at 12).

4

3. Defendant was advised of and understood the following:

    a. That he has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 12-13);

    b. That he has the right to assistance of counsel throughout the trial (Tr. at 13);

    c. That defendant is presumed innocent, and the government has the burden of coming forward to prove defendant's guilt beyond a reasonable doubt (Tr. at 14);

    d. That defendant's attorney would have the opportunity to cross examine the government witnesses (Tr. at 14);

    e. That defendant would have an opportunity to subpoena witnesses to testify on his behalf (Tr. at 15);

    f. That defendant would have an opportunity to testify on his own behalf, but that he would not be required to and the jury would be instructed that they could not draw an adverse inference if he chose not to testify (Tr. at 15); and

g. That defendant would have an opportunity to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 16).

4. Defendant was informed and understood that by pleading guilty, he is giving up all of the rights described above (Tr. at 17).

5. Defendant was informed that during the change-of-plea proceeding, he would be placed under oath and questioned by counsel and the judge (Tr. at 17). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 17). Defendant stated that he understood (Tr. at 17).

6. Defense counsel had full access to the government's file and agreed that his review of the evidence and his independent investigation confirmed that the facts were as alleged by the government and that it is in the defendant's best interest to plead guilty (Tr. at 18).

7. The government made the following factual basis for the crimes to which defendant intends to plead guilty:

> The Government would present evidence that we believe would prove beyond a reasonable doubt that the defendant, Mr. Bomar, together with others, engaged in a scheme to default mortgage lenders. That the scheme involved the acts specified in the [information] and the plea agreement involving purchasing rental properties, creating false lease agreements and false

6

> rental fee information, causing inflated appraisals to
> be prepared, preparing false and fraudulent loan
> applications and supporting documents, submitting those
> to lenders and causing the lending institutions in
> reliance on those material representations, false and
> fraudulent representations to send funds in interstate
> commerce.  The scheme in Count One as a result of it,
> Mr. Bomar obtained funds by fraud in the amount of
> $177,906.25.  And in particular, the transfer of funds
> that's charged in the final paragraph of Count One on
> March 22, 2002, would be established by the evidence.
> In Count Two, the evidence would prove the scheme
> that's alleged there.  Some differences in the way that
> scheme was perpetrated, that one in particular involved
> preparing false contracts for deed and false lease
> agreements, obtaining inflated appraisals, preparing
> false loan payoff documents, false and fraudulent
> verifications of mortgages and then preparing and
> submitting false and fraudulent loan applications to
> lenders.  Mr. Bomar knew that the lender, Bank of
> America, would rely on those representations.  And in
> fact, that on August 9th, 2002, Mr. Bomar caused a wire
> transmission of a document called a document order
> request for the closing of a loan for the purchase by
> him of property in Independence, which wire transfer or
> wire facsimile transmission went between Independence,
> Missouri, and Dallas, Texas. . . . [Witnesses Anthony
> Long and Mitchell Medlin will] say [defendant] was
> personally involved in falsifying the lease agreements
> and supplying false rental information. . . .  There
> were lease agreements obtained from the prior owner of
> some of these properties, Your Honor, and those were
> falsified by increasing the rental amounts and also in
> cases by changing dates and falsifying signatures. . .
> .  We have the evidence of the people, of the prior
> owners and the documents themselves.  And these things,
> of course, were not disclosed to the lenders and were
> used in part -- as part of the appraisals.

(Tr. at 19-20, 27-29).

8. Defendant was placed under oath (Tr. at 20) and admitted the following:

During sometime between February 2002 and May10, 2002, he knew an individual by the name of Anthony Long (Tr. at 21). Defendant, Mr. Long, and others knowingly and intentionally executed a scheme to defraud and to obtain money, funds, credits, and other property by means of false and fraudulent representations and promises (Tr. at 21). On or about March 22, 2006, defendant knowingly and willfully caused to be transmitted by wire between Ann Arbor, Michigan, and Kansas City a wire transfer from InterFirst, a division of ABN AMRO, to Commerce Bank Kansas City, for a credit to the account of Security Land Title of funds in the amount of $52,191.78 (Tr. at 22-23). That involved a property at 2435 Lawn in Kansas City, Missouri (Tr. at 23). On or about August 9, 2002, defendant knowingly and willfully caused to be transmitted by wire communication and interstate commerce between Independence, Missouri, and Dallas, Texas, a document order request for the closing of a loan for the purchase by defendant of a property at 2619, 2621 South Norwood Avenue, Independence, Missouri, which was sent by facsimile transmission from the offices of First

8

Equity Bank, Independence, Missouri, to Bank of America, Dallas, Texas, in connection with preparation of documents to close the loan (Tr. at 23). The management funds were in excess of the allowed funds, which defendant knew (Tr. at 26). Defendant was also receiving kickbacks which was not disclosed to the people making the loans to defendant (Tr. at 26-27). None of this information was disclosed on any HUD forms (Tr. at 27).

    9. Defendant is familiar with the plea agreement, discussed it with his attorney, and understands it (Tr. at 29-30). In addition, I went over the entire plea agreement with defendant during the change-of-plea hearing (Tr. at 30-36).

    10. No one has made any threats or promises in order to get defendant to plead guilty (Tr. at 36-37).

    11. Defendant is satisfied with the advice and guidance he has received from Mr. Handley (Tr. at 37). There is nothing he has done that defendant did not want him to do (Tr. at 37). There is nothing he has failed to do that defendant wanted him to do (Tr. at 37).

    12. Defendant is 39 years of age (Tr. at 37). He graduated from college (Tr. at 37). Defendant has no mental

9

health or substance abuse issues (Tr. at 38). Defendant was not under the influence of any drug or alcohol during the change-of-plea hearing (Tr. at 38).

13. Defendant tendered a plea of guilty to counts one and two of the information (Tr. at 39). The parties waived the ten-day objection period (Tr. at 39).

## IV. ELEMENTS OF THE CHARGED OFFENSES

The essential elements of wire fraud are: (1) a scheme to defraud, (2) the use of interstate wires incident to the scheme, and (3) an intent to cause harm. U.S. v. Edelmann, 458 F.3d 791, 812 (8th Cir. 2006).

## V. CONCLUSION

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a Magistrate Judge for issuance of a report and recommendation on whether defendant's guilty plea should be accepted.

2. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of the crimes charged in counts one and two of the information.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order

10

accepting defendant's guilty plea and adjudging defendant guilty of the offenses charged in counts one and two of the information.

                                                /s/ *Robert E. Larsen*
                                               ROBERT E. LARSEN
                                               United States Magistrate Judge

Kansas City, Missouri
September 29, 2006